**LAROSE v. N. O. PUB. SERVICE, INC.**

———

(January 21, 1929.   Opinion and Decree.)
(February 11, 1929.   Rehearing Refused.)
(March 26, 1929.   Decree Supreme Court, Writ of Certiorari Refused.)

———

Harry McEnerny, Jr., and Chas. Danna, of New Orleans, attorneys for plaintiff, appellee.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellant.

JANVIER, J.   Plaintiff, while a passenger in one of defendant's cars was injured as a result of what may be termed a "side

swipe collision" with some part of a two-mule lumber wagon. She claims rather extensive injuries.

Defendant appealed from a judgment against it, and, plaintiff, dissatisfied with the verdict and judgment for $2,000.00 in her favor has answered the appeal.

The street car was on its way up Magazine Street. The wagon was parked between the car track and the lake side curb of the street. It was facing uptown, that is in the same direction in which the car was going, and, as it was an open lumber wagon all the witnesses had a clear view of the driver's seat and all agree that there was no one on it; that the team was entirely unattended.

Plaintiff was seated some distance from the front of the car, in fact, as she expresses it, "It was not quite in the middle —a little bit back, you know."

There can be no doubt that as plaintiff was a passenger for hire there is a presumption that the carrier was negligent. "An injury to a passenger creates a presumption of negligence on the part of the carrier." Foster vs. N. O. Public Service, Inc., 3 La. App. 514. The burden is therefore on the carrier to disprove this negligence.

Had the front end of the car been struck by the tongue of the wagon or the harness of the mules or whatever it was that came into contact with the car, defendant would have been in a very difficult situation, and it is doubtful if it could have successfully disproved its negligence. But there are two facts which to us negative plaintiff's contention that the motorman was at fault in misjudging the distance between the mule team and his street car. One of these facts is that the part of the car which first came into contact with the wagon was in the rear of the middle. The

other fact is that Mobley, an entirely disinterested witness, was standing on the right front steps of the car and was not struck by the mule team. It is quite evident then that at the time the front end of the car reached a point alongside the mule team, there was ample room for it to pass in safety. This situation was certainly not later altered by the street car as it was proceeding along fixed rails and in a straight line. Unless then we are prepared to hold that the motorman should have foreseen that the mules were going to move, we are unable to see how we can find defendant guilty of negligence.

Let us see what the motorman actually did. According to all witnesses he reduced the speed of the car when he noticed that the proximity of the wagon to the car track raised a doubt as to whether there was enough room to pass. He either leaned towards the side of the car or stepped to the vestibule door and sighted to see if he could pass. That his judgment that there was room to pass was good, is evidenced by the circumstances which we have referred to, that is to say, that the front end of the car and more than one-half of it passed in safety.

In spite of the statements of some of plaintiff's witnesses that the street car's speed was excessive, we feel that the physical facts entirely disprove this. The car was crowded and yet there was time before the car proceeded more than about half a block beyond the point of the accident for one of the passengers to make his way through the crowd to the rear platform and to warn the conductor to give an emergency stop signal, which he did, and, for the motorman, to bring the car to a complete stop. That all of this could have been done in a distance of approximately one-half of a square is ample proof that

the speed of the car was moderate. It appears to us that the motorman exercised due caution both in looking out and in regard to the speed of the car.

It is a very ordinary occurrence for street cars to pass close to unattended horse or mule-drawn vehicles and unless the animal or animals show signs of restiveness the motorman need do no more than to see that there is a safe margin between his car and the vehicle and then proceed at a reasonably slow speed. As the Supreme Court of Louisiana said in Trenchard vs. Railway Co., 123 La. 36, 48 So. 575:

"The negligence imputed to the railway company is in the failure of the motorman to have brought his car to a full stop as soon as he saw the wagon was without a driver * * *. We find no negligence on the part of the railway company. The horse was moving along the straight road tamely at a trot. Simply because there was no driver was no reason why the motorman should bring his car to a full stop in the middle of a block."

To the same effect this Court said in Scariana vs. New Orleans Railway & Light Company, 14 Orl. App. 18:

"As the motorman had an undoubted right to proceed as soon as the track ahead of him was clear, and his duties called upon him to keep a watch forward, it is clear that what occurred twenty feet behind him cannot be attributable to any negligence on his part."

The slight discrepancies in testimony as to whether the motorman put his head out the vestibule door or only leaned in that direction and as to whether the car stopped just before or just after crossing the next street and the argument that certain of the witnesses should not be believed because they testified that they did not hear the emergency stop signal, are of no importance and in fact, rather tend to prove the truthfulness of their testimony on more important matters.

It is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and there is now judgment in favor of defendant dismissing plaintiff's suit.